IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID LEE LEWIS, SR.,      )
                             )
      Plaintiff,         )
                             )
v.                        )      CASE NO. 2:17-cv-790-SRW
                             )
NANCY A. BERRYHILL,      )
Commissioner of Social Security,  )
                             )
      Defendant.       )

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff David Lee Lewis, Sr., applied for disability insurance benefits under Title II of the Social Security Act ("the Act") on November 4, 2009, and Supplemental Security Income (SSI) under Title XVI on November 9, 2009, alleging a disability date of October 1, 2009. (R. 165, 174, 530).[2] The applications were denied initially on February 27, 2010, and upon reconsideration on March 22, 2010. (R. 103, 530). Thereafter, plaintiff requested a hearing before an Administrative Law Judge (ALJ) and appeared at the hearing on March 23, 2011. (R. 37–79, 530). In a hearing decision dated January 18, 2012, the ALJ found that plaintiff was not disabled. (R. 21–29). Plaintiff ultimately appealed to the district court

---

1 For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time the claim was filed. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

2 Prior to filing these applications, Plaintiff was awarded benefits for a closed period from January 22, 2007 to July 2, 2009, due to limitations caused by his carpal tunnel syndrome. (R. 530).

and the court remanded the case for further consideration because the ALJ erred in his credibility analysis. (R. 530); *Lewis v. Colvin,* 2:13cv355-MHT (M.D. Ala. July 29, 2014).

The ALJ held a new hearing on June 7, 2016, which plaintiff attended without counsel. (R. 559–75). In a hearing decision dated December 8, 2016, the ALJ found that plaintiff was not disabled. (R. 530–51). The Appeals Council denied plaintiff's request for review. (R. 522–25). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security (Commissioner). *Id*.

In the instant appeal, plaintiff asks the court for relief in his favor due to his health condition. *See* Docs. 16, 19. This case is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to entry of final judgment by the Magistrate Judge. *See* 28 U.S.C. § 636(c); *see also* Docs. 11, 12. After careful scrutiny of the record and briefs, for reasons herein explained, the court concludes that the Commissioner's decision is due to be reversed and remanded.

## I.  NATURE OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id.*

## II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is

supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] decision for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In other words, this court is prohibited from reviewing the Commissioner's findings of fact *de novo*, even where a preponderance of the evidence supports alternative conclusions.

While the court must uphold factual findings that are supported by substantial evidence, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

To qualify for SSI and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v). The Commissioner must determine, in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to a formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562–63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [his] work, the burden

shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

### III. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was 39 years old on his alleged onset date. (R. 165, 549). He had at least a high school education. (R. 549). His past relevant work included tree trimmer helper, material handler, and strapper. (R. 549).

In evaluating plaintiff's application, the ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. (R. 533–51). At step one, the ALJ found that plaintiff met the insured status requirements through June 30, 2012. (R. 533). The ALJ found that he had not engaged in substantial gainful activity during the relevant period. (R. 533). After reviewing the medical evidence and hearing testimony, the ALJ determined that plaintiff's severe impairments included right carpal tunnel syndrome, left carpal tunnel syndrome, status-post surgical release, left shoulder acromioclavicular arthritis with labral tear and impingement, status-post surgical repair, cervicalgia/disorder of the cervical region and obesity. (R. 533). At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or equaled any of the impairments listed in 20 C.F.R. pt. 404 subpt. P, app. 1 (2017). (R. 534). The ALJ evaluated plaintiff's credibility and found that the objective evidence did not support his subjective complaints. (R. 536–57). The ALJ then found that plaintiff retained the RFC to perform a

limited range of light work. (R. 535–36). At step four, the ALJ determined that plaintiff was unable to perform his past relevant work as a tree trimmer helper, material handler, or strapper. (R. 549). However, the ALJ determined that plaintiff was capable of performing other jobs that exist in significant numbers in the national economy. (R. 550). Thus, the ALJ found that plaintiff was not disabled during the relevant period. (R. 551).

## IV. ISSUE

Whether the ALJ's decision that plaintiff is not disabled is supported by substantial evidence?

## V. ANALYSIS

The ALJ has a duty to develop the record fully and fairly. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735–36 (11th Cir. 1981). This duty exists whether or not the plaintiff is represented by counsel, but it rises to a special duty for an unrepresented plaintiff. *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). Additionally, the Commissioner is obligated to notify a claimant of his statutory right to retained counsel at the Social Security hearing, and to solicit a knowing and voluntary waiver of that right. *See* 42 U.S.C. § 406; *Cowart*, 662 F.2d at 734. The obligation to develop the record fully and fairly exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. *See Cowart*, 662 F.2d at 735–36.

Here, plaintiff was represented by counsel at the first hearing. At some point later on, counsel withdrew. New counsel filed a notice of appearance and, thereafter, withdrew. Plaintiff appeared at the administrative hearing on June 7, 2016, without counsel or a

representative. The following is the exchange between the ALJ and plaintiff at the administrative hearing regarding counsel:

ALJ:        I know that you have had attorneys that have helped you in the past. But, it looks like that they've not continued to offer you any assistance. The last attorney we had withdrew last fall. And do you, as far as you know, is there anybody supposed to be here with you today?

Plaintiff:       No, sir.

ALJ:        Okay. All right. Then, well, I know that sometimes attorneys don't want to continue representing you. But, that doesn't mean you still can't go forward with your claim. Social Security will make [a] decision with or without attorneys involved or someone representing you.

Plaintiff:       Okay.

ALJ:        And but, I do – I do remind you of that you always have that right if you decide to go back and hire someone again. Mr. Lewis, let me check and make sure I still have a good address and phone number. I've got you at 182 East Bills Street in Greenville, 36037.

Plaintiff.       Yes, sir.

(R. 561–62).

If there is no knowing and voluntary waiver of counsel by an unrepresented claimant, the ALJ's obligation to develop a full and fair record rises to a special duty. *See Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir. 1995) (citing *Smith*, 677 F.2d at 829). This special duty requires the ALJ to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart*, 662 F.2d at 735 (citations omitted). The Eleventh Circuit explains that when the right to representation has not been waived,

> [t]his special duty requires, essentially, a record which shows that the claimant was not prejudiced by lack of counsel. In carrying out this duty,

the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Smith*, 677 F.2d at 829 (citations omitted). "Under this standard, we are not required to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ." *Clark* [*v. Schweicker*], 652 F.2d [399, 404 (5th Cir. 1981)]. Nevertheless, there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record.

*Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir. 1995) (quoting *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir.1985)).

The portions of the hearing transcript quoted above reflect there was not a knowing waiver of the right to counsel. Although plaintiff responded affirmatively to the ALJ's question, it is unclear whether plaintiff was confirming his correct address or responding to the ALJ's reminder that he could hire counsel again later. In his decision, the ALJ states, that he "again made the claimant aware of his right to representation at the hearing." R. 531. But that is not what the hearing transcript indicates. Rather, the transcript reflects that the ALJ merely reminded plaintiff he could always "go back and hire somebody again." R. 562. Nothing in the exchange demonstrates an understanding by plaintiff that he had the option – and, indeed, the right – to obtain counsel *before* proceeding with the hearing. *See Cowart*, 662 F.2d at 734–35 (claimant's affirmative response when asked whether she wished to proceed without counsel did not reflect a true desire to do so when viewed in the context of other testimony). Thus, on this record, a knowing and voluntary waiver is lacking. *See Brown*, 44 F.3d at 935. Notwithstanding, remand is only warranted if prejudice from the lack of counsel exists.

At the hearing, plaintiff appeared wearing a brace or splint on his wrist. R. 562.

Other than confirming that plaintiff could still raise his hand to take an oath with the splint on his wrist, the ALJ did not ask plaintiff how often he needs to wear the brace or whether it causes any limitations. Plaintiff testified that he had left hand surgery twice for his carpal tunnel issues, and he testified that he may have to have surgery on the right hand. R. 566. Although the ALJ confirmed with plaintiff that he still suffers from bilateral carpal tunnel syndrome, there was very little questioning regarding the extent of plaintiff's limitations due to this condition. The ALJ did not "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," *Smith*, 677 F.2d at 829, and yet he reached the conclusion that the plaintiff "has the ability to use his hands to perform a range of light work activity, and that he can continuously handle, finger and feel bilaterally." R. 544.

Specifically, regarding the plaintiff's bilateral carpal tunnel syndrome, the ALJ stated as follows:

> In terms of the claimant's alleged bilateral hand impairment, the record documents that the claimant has been diagnosed with bilateral carpal tunnel syndrome. With regard to the left hand, in March 2009 the claimant had surgery to correct an ulna nerve entrapment of the left wrist. On May 5, 2009, Dr. Palmer returned the claimant to light duty, with no use of the left hand. On June 16, 2009, Dr. Palmer opined that the claimant was at maximum medical improvement with a 7% impairment of the left upper extremity. The claimant was returned to full duty. The treatment notes indicate that the claimant did not have any thenar atrophy in the left wrist. The treatment notes indicate that the claimant reported post-surgical improvement. With regard to the right hand, a nerve conduction test in March 2009 was negative for right carpal tunnel syndrome. However, a nerve conduction study in July 2009 was positive foe (sic) moderate to severe carpal tunnel syndrome. The claimant opted not to have surgery. The claimant was instructed to wear a splint at night and to perform stretching exercises, with the hope of the problem resolving without surgery. Dr. Barnes performed a consultative examination in February 2010, and noted that an examination of the wrist revealed pain in the (sic) both hand and a positive Tinel's sign, and 4/5 strength in the upper

extremities. A neurological examination revealed that the claimant has some gross loss of vibratory sense and touch and poor coordination of the right hand. His gross motor movements are poor. His fine motor coordination is poor. However, the claimant's treatment records from April 2010 to June 2011 do not document complaints of ongoing problems secondary to bilateral carpal tunnel syndrome. A treatment note in January 2011 noted that [t]he claimant had 5/5 strength in the right upper extremity.[3] Moreover, in June 2011, Dr. Johnson performed a consultative examination which revealed that the claimant had full range of motion without pain in the bilateral wrists. Moreover, the examination revealed that the claimant's right grip strength was 30 pounds, right pinch strength was 14 pounds, left grip strength was 20 pounds, and left pinch strength was 10 pounds. Furthermore, recent treatment records from 2015 to 2016, do not document that the claimant has persistent problems with the use of his hands. Overall, the medical evidence of record supports a finding that the claimant has the ability to use his hands to perform a range of light work activity, and that he can continuously handle, finger, and feel bilaterally.

R. 544 (citations omitted).

At the administrative hearing, plaintiff testified he was treated monthly by family physician Dr. Chandra Shekar from 2012 to the present. R. 564. Plaintiff stated that he saw Dr. Shekar for numbness, backache, and headaches and that Dr. Shekar took x-rays and MRIs, and prescribed medication for him. R. 564–65. The ALJ advised plaintiff no fewer than four times that he intended to write Dr. Shekar to get all of Dr. Shekar's records and test results. R. 565, 569, 573, 574. The ALJ noted that he wanted to see what the MRI showed and commented that he might have a doctor look over it. R. 574. The hearing officer stated that all of the records were in plaintiff's file. R. 565. The only "new" records from Dr. Shekar are dated January 15, 2015 through June 1, 2016, even though plaintiff

---

3 The ALJ's reference to 5/5 strength specifically referenced the right shoulder and not hand/grip strength. *See* R. 472.

testified that he had seen Dr. Shekar monthly since 2012. There are references to his carpal tunnel condition in Dr. Shekar's records, including a reference to carpal tunnel syndrome that started in August 8, 2007, and became bilateral on January 6, 2014. *See* R. 911. There is a reference to tingling and numbness in both hands in November 2015 (R. 920), and the 2014 medication history reflects that plaintiff was taking medication for tingling and numbness due to carpal tunnel syndrome. (R. 861). Additionally, there are other references in the records to medications for tingling and numbness that do not specifically mention carpal tunnel. The ALJ discusses Dr. Shekar's records, but does not mention why there are no treatment notes from 2012 to 2014.

The ALJ had a VE present at the hearing, but he failed to ask the VE any questions. Instead, in his decision, the ALJ relied on the interrogatories sent to a VE in 2011 which used the RFC from the consultative examiner's report in 2011. At the hearing, the ALJ specifically mentioned getting copies of the x-rays and MRI reports regarding plaintiff's hands to help the ALJ understand how severe plaintiff's problems are. Additionally, the ALJ commented that he may have a doctor review the MRIs. R. 574. However, there is no indication in the record that copies of recent reports were obtained or that a consultative examiner was retained to review any records.

When the ALJ noted at the hearing that he intended to obtain updated records from Dr. Shekar, the hearing officer stated, "[e]verything in his folder is already in the file. I'll enter it." R. 565. At the start of the hearing, the ALJ acknowledged having 19 medical (F) exhibits. R. 563. The only additional exhibits that appear to have been added are those contained in exhibit 20F, which are the records of Dr. Shekar from January 2015 to June

2016. R. 558. Since these are the only additional records indexed, it appears that these were the records referenced by the hearing officer as already in possession and that would be entered. Thus, despite the ALJ's multiple representations that he would obtain additional records and testing after the hearing, it is not clear that this was ever done.[4] Even if the 2015-2016 records were obtained after the hearing, they still appear incomplete, as there are no notes of treatment from 2012 through 2014, and there are no x-ray or MRI results contained in the records at all. R. 905–28.

A review of these records reveals that plaintiff was seen on January 15, 2015, for a check-up and medication refill. R. 928. The records consist of treatment notes of monthly visits, or at least visits every couple of months, which note plaintiff's objective and subjective complaints, document his vital signs and exam findings, and record diagnoses and treatment. The visits were fairly regular during this time consistent with plaintiff's testimony, but records from 2012 to 2014 are glaringly absent. The ALJ stated that he needed the MRI and x-ray testing reports to see how severe plaintiff's problems are, but – when no such testing showed up in Dr. Shekar's records, nor any treatment records from 2012 to 2014 – the ALJ relied on the lack of testing/complaints to conclude that the plaintiff can handle, finger, and feel continuously as stated by the consultative examiner's (CE) 2011 report. Arguably, the ALJ's reliance on the earlier written reports of the CE and VE

---

4 The ALJ wrote a letter to plaintiff on June 28, 2016, stating that he had obtained updated records and specifically referencing exhibit 20F, *see* R. 903–04, which appear to be the records the hearing officer already had on June 7, 2016, at the hearing. There is no indication in the record that the ALJ tried to obtain any additional records from Dr. Shekar or any other source despite the ALJ's repeated claim that he would obtain Dr. Shekar's records and the MRI and x-ray reports.

was prejudicial to the plaintiff where plaintiff essentially had no opportunity to challenge these reports since he no longer had counsel. Given the heightened duty of the ALJ to develop the record, the ALJ should have questioned plaintiff regarding the limitations caused by his bilateral carpal tunnel, explored the gap in Dr. Shekar's records in light of plaintiff's testimony that he had been treated by her since 2012, followed up regarding the missing diagnostic reports, and otherwise scrupulously probed into, inquired of, and explored for all relevant facts. *See Smith*, 677 F.2d at 829

The Commissioner argues that the *pro se* plaintiff waived any argument on appeal due to his failure to set forth specific arguments in his brief. The Commissioner acknowledges that the court should construe *pro se* pleadings liberally, but also correctly points out that the plaintiff has the burden of proving his disability. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c) (a claimant must provide evidence showing how his impairments affect his functioning during the alleged period of disability); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim") (internal citation omitted). In her brief, the Commissioner recognized the issue on appeal as "whether substantial evidence supported the [ALJ's] decision that plaintiff is not disabled." (Doc. 17 at 1). Though plaintiff does not specifically argue that the ALJ failed to develop a full and fair record, this argument falls within the court's review of a claim of lack of substantial evidence. *See Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268–69 (11th Cir. 2015). In *Henry*, the Eleventh Circuit held that its "jurisdiction encompasses not only those issues that a party 'expressly referred to' but also those 'impliedly intended for

appeal.'" *Id.* (quoting *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1080 (11th Cir.2003)). "It is impossible to review whether the ALJ's decision is supported by substantial evidence if the record is not fully and fairly developed." *Henry*, 802 F. 3d at 1269 (citing *Cowart*, 662 F.2d at 735). Given plaintiff's lack of counsel at the administrative hearing, and the concomitant heightened duty of the ALJ to develop the record – which the ALJ failed to do – the court cannot determine whether the decision is supported by substantial evidence. Thus, this matter is due to be reversed and remanded for full and fair development of the record.

## VI. CONCLUSION AND ORDER

Accordingly, for the reasons discussed, the decision of the Commissioner will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) by separate judgment so that the Commissioner can conduct additional proceedings consistent with this opinion.

Done, on this the 31st day of May, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge